The BOARD OF LAW EXAMINERS OF
THE STATE OF TEXAS, Relator,

v.

The Honorable Lee GABRIEL,
Respondent.

No. 96–0605.

Supreme Court of Texas.

July 9, 1997.

Jennifer Gilchrist, Dedora Jefferson, La-
quita A. Hamilton, Jorge Vega, Dan Morales,
Austin, for relator.

Steven Wayne Young, Linda A. Acevedo,
Austin, for Commission of Lawyer Disci-
pline/State Bar of Texas.

Frank J. Douthitt, Henrietta, for Jack G.
Neal, real party in interest.

HECHT, Justice, delivered the opinion of
the Court, joined by PHILLIPS, Chief
Justice, SPECTOR, OWEN and ABBOTT,
Justices.

The principal question in this original man-
damus proceeding is whether the Board of
Law Examiners is authorized by the Rules of
Disciplinary Procedure to investigate the
moral character and the mental and emotion-
al fitness to practice law of a person petition-
ing for reinstatement to membership in the
State Bar of Texas.  The answer is no.

Jack G. Neal was disbarred in 1985 as a
result of his conviction of a felony (official
misconduct).  Neal now seeks reinstatement.

The Rules of Disciplinary Procedure prescribe the process for reinstatement after disbarment or resignation in lieu of disciplinary action. Tex.R. Disciplinary P. 11.01–11.08, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon Supp.1997). A person must file a verified petition in the district court containing, among other things, "[a] statement that at the time of the filing of the petition, the petitioner is of good moral character, possesses the mental and emotional fitness to practice law, and during the five years immediately preceding the filing of the petition, has been living a life of exemplary conduct." *Id.* 11.02(E). The petitioner must serve notice of the petition for reinstatement on the State Bar's Chief Disciplinary Counsel and publish notice as a paid classified announcement in the *Texas Bar Journal. Id.* 11.04.

Neal fully complied with these rules. He filed a verified petition in the district court alleging: "At the time of the filing of this petition, Jack G. Neal is of good moral character and possesses the mental and emotional fitness to practice law. Jack G. Neal has lived a life of exemplary conduct during the five years immediately preceding the filing of this petition." He served the Chief Disciplinary Counsel, who filed an answer on behalf of the Bar. Neal's classified announcement was published in the *Texas Bar Journal.* 58 Tex. Bar J. 860 (Sept.1995).

The rules further provide that at trial, "petitioner has the burden of establishing by a preponderance of the evidence that the best interests of the public and the profession, as well as the ends of justice, would be served by his or her reinstatement." Tex.R. Disciplinary P. 11.03. The rule requires the court to "deny the petition for reinstatement if it contains any false statement of a material fact or if the petitioner fails to meet the burden of proof." *Id.* The rules also prescribe the requisite findings and the available relief:

> If the court is satisfied after hearing all the evidence, both in support and in opposition to the petition, that the material allegations of the petition are true and that the best interests of the public and the profession, as well as the ends of justice,

will be served, the court may render judgment authorizing the petitioner to be reinstated upon his or her compliance within eighteen months from the date of the judgment with Rule II of the Rules Governing Admission to the Bar of Texas in effect as of the date upon which judgment authorizing reinstatement is entered. The judgment shall direct the Board of Law Examiners to admit the petitioner to a regularly scheduled bar examination in accordance with that board's rules and procedures relating to the examination of persons who have not previously been licensed as lawyers in Texas or in any other state.

*Id.* 11.06.

Thus, to grant a petition for reinstatement, the district court must find two things. First, the court must find that the petitioner has proven true by a preponderance of the evidence the material statements in the petition. Because the petition must state that petitioner is of good moral character, is fit to practice law, and has led an exemplary life for the preceding five years, the court must find these things to be true before it can grant the petition. Second, the court must find that reinstatement will serve the public's and profession's best interests as well as the ends of justice.

Neal and the Bar appeared at trial by counsel and presented evidence and argument. The district court then made the following findings:

> The Court has considered the pleadings and all of the evidence both in support and in opposition to the petition. The Court finds that the material allegations of the petition are true and that all prerequisites to the filing and maintaining of same have been met. The Court also finds that at the time of the filing of this petition, Jack G. Neal is of good moral character and possesses the mental and emotional fitness to practice law and he has lived a life of exemplary conduct during the five years immediately preceding the filing of the petition and that the best interests of the public and the profession, as well as the ends of justice, will be served, if the court renders a judgment authorizing the Petitioner, Jack G. Neal, to be reinstated upon

passing a bar examination regularly administered by the Texas Board of Law Examiners within eighteen months from the date of this judgment.

Based on these findings, the court rendered judgment as follows:

1. That the license to practice law of Petitioner Jack G. Neal, be reinstated upon passing a bar examination regularly administered by the Texas Board of Law Examiners within eighteen months from the date of this judgment.

2. That the Board of Law Examiners admit the Petitioner, Jack G. Neal, to a regularly scheduled bar examination for the examination of persons who have not previously been licensed as lawyers in Texas or in any other state.

3. That the Board of Law Examiners not make additional inquiry into the moral fitness or character of Petitioner, Jack G. Neal.

4. That upon successfully passing a regularly scheduled bar examination Petitioner, Jack G. Neal, shall be admitted to the practice of law in the State of Texas.

5. That all costs are adjudged against Petitioner, Jack G. Neal.

The Bar did not appeal, and the judgment has become final.

■ Having completed the process prescribed by the Rules of Disciplinary Procedure, Neal next requested and received from the Board of Law Examiners an application for admission to the bar exam. The Board accepted Neal's application and allowed him to take the bar exam, which he passed. However, the Board has refused to recommend Neal for reinstatement because it believes that it cannot do so under the Rules Governing Admission to the Bar without first investigating his character and fitness as it would every other applicant's, and such an investigation is prohibited by the district court's order. To resolve the conflict between what the Board perceives as its duty and the district court's order, the Board petitioned this Court for mandamus directing the district court to modify its order to remove the prohibition against the Board's investigation of Neal's character and fitness.

The Board's duty to investigate character and fitness derives from Rule IV of the Rules Governing Admission to the Bar, which states in part:

(a) No one shall be eligible for *admission* to the Texas Bar or for certification as a Foreign Legal Consultant until the investigation of such person's moral character and fitness has been completed, and it has been determined by the Board that such individual possesses good moral character and fitness.

TEX.R. GOVERN. BAR ADMIS. IV (West Supp. 1997) (emphasis added). By its own terms, Rule IV applies only to persons applying for admission, not persons applying for reinstatement.

■ Rule II of the Rules Governing Admission to the Bar states in pertinent part:

(a) To be eligible for admission *or reinstatement* as a licensed attorney in Texas, the Applicant shall:

(1) comply with all applicable requirements of these Rules;

\*       \*       \*       \*       \*       \*

(3) be of present good moral character and fitness. . . .

*Id.* II (emphasis added). Unlike Rule IV, Rule II does not provide for the Board to investigate an applicant's character and fitness. Rule II provides only that an applicant for admission or reinstatement *be* of good moral character and fitness, not that the Board make a determination to that effect. A judicial finding in a reinstatement proceeding that petitioner is of good character and fitness satisfies Rule II.

■ This, of course, only makes sense. To require the Board to investigate the character and fitness of petitioners for reinstatement would lead to absurd results. One of the two core findings a district court must make in granting reinstatement is that "petitioner is of good moral character, possesses the mental and emotional fitness to practice law, and during the five years immediately preceding the filing of the petition, has been living a life of exemplary conduct." TEX.R.

DISCIPLINARY P. 11.02(E). If the Board of Law Examiners were required to redetermine petitioner's character and fitness immediately after the district court has made its finding, the Board, considering all the same evidence, might disagree with the district court. If the Board is to make the final decision, why have a court proceeding? The district courts have better things to do than screen reinstatement petitions for the Board of Law Examiners. If the court's decision is final, why have the Board redetermine it? The Board certainly has better things to do than reinvestigating, to no avail, issues that courts have just tried.

The scheme of the Rules of Disciplinary Procedure is to require a petitioner for reinstatement to obtain a judicial determination of the essential conditions for reinstatement. The district court's role in the process is certainly not essential. The Board of Law Examiners is as capable as the district court of determining character and fitness; after all, the Board makes such determinations for everyone admitted to the State Bar. But if the Board is the entity that should make character and fitness findings for reinstatement, then there is no reason to require the district court to make them. There is certainly no reason for the Board to make findings *de novo* after a court has rendered judgment.

There is a good reason for the reinstatement procedures to be as they are. Besides character and fitness, the other core finding that must be made is that reinstatement serves public's and profession's interests and the ends of justice. The Board of Law Examiners is not incapable of making such a finding, but the issue is more appropriately addressed to the court. If the court should make this finding, it only makes sense that the court would also determine character and fitness. It would not do for the court to determine that reinstatement served the public, the profession, and justice, only to have the Board find that petitioner was not fit to practice law. If one entity should make both determinations, there are reasons why that entity should be the court rather than the Board.

The dissent argues that to allow district courts to determine the character and fitness of petitioners for reinstatement allows for "home-town" justice which could be prevented if the determinations were made by the Board. If this is a legitimate concern, the Rules of Disciplinary Procedure should be changed. But the argument does not justify ignoring the existing rules. The dissent also argues that the Board has an interest in reinstatement proceedings that is not protected by the presence of the State Bar as a party. Again, if this is true, the rules should be changed to make the Board a party to reinstatement proceedings either in addition to or in lieu of the Bar. The argument does not justify allowing the Board to second-guess district judges or collaterally attack their findings. Finally, the dissent argues that we should "find it a comfort" that both a district court and the Board would be "checking and rechecking a disbarred lawyer's character". We do not. We think the court and the Board are both able to perform this function, but we see absolutely no reason to burden both of them with the same inquiry, nor can we accept that the Board can choose not to be bound by the court's determination.

The district court in Neal's case was not authorized to prohibit the Board from inquiring into Neal's character and fitness, but since the Board has no power to make such inquiry, the court's error was inconsequential. If the Board were impeded from exercising its responsibilities, of course, mandamus might be appropriate. *State Bar of Texas v. Jefferson,* 942 S.W.2d 575 (Tex. 1997). But that, as we have explained, is not the case. The court should also have ordered that Neal not be reinstated until he complied with Rule II of the Rules Governing Admission to the Bar. However, since Neal has fully complied with Rule II, that error is moot.

Accordingly, without hearing oral argument, the Court concludes that the Board is not entitled to mandamus relief. TEX. R.APP.P. 170. The Board should certify Jack G. Neal to this Court for reinstatement to membership in the State Bar upon his passing the bar exam and without further investigation into his character and fitness.

GONZALEZ, Justice, filed a dissenting opinion, in which CORNYN, ENOCH and BAKER, Justices, join.

Barely two months ago, we issued mandamus because a trial court lacked the power to enjoin a grievance committee proceeding. *State Bar of Tex. v. Jefferson,* 942 S.W.2d 575 (Tex.1997). We held that a district court lacks such power because the Texas Rules of Disciplinary Procedure do not authorize such equitable relief. *Id.* at 576; *see also Board of Disciplinary Appeals v. McFall,* 888 S.W.2d 471, 472–73 (Tex.1994); *State v. Sewell,* 487 S.W.2d 716, 718–19 (Tex.1972). Today, the Court allows a district court to enjoin the Board of Law Examiners from discharging its responsibility, despite the fact that the Board was not a party to any proceeding in that court. Because I believe that mandamus is warranted in this case, I dissent.

This original proceeding arises from Jack G. Neal's attempts to regain his license to practice law. His license was suspended in 1977 and again in 1983. In 1985, he was disbarred after being convicted of felony abuse of office while he was district attorney. In 1995, he petitioned the trial court for reinstatement. Although the State Bar appeared in the proceeding, the Board of Law Examiners was not made a party or given notice. After a hearing, the trial court granted the petition for reinstatement and found that Neal presently possessed good moral character and had lived a life of exemplary conduct for the previous five years. The trial court ordered (1) that Neal's law license be reinstated upon his passing the bar examination, and (2) that "the Board of Law Examiners not make additional inquiry into the moral fitness or character of Petitioner, Jack G. Neal."

A proceeding for reinstatement of a law license is initiated by serving a copy of the petition on the Chief Disciplinary Counsel for the State Bar and placing a classified announcement in the *Texas Bar Journal.* TEX.R. DISCIPLINARY P. 11.04. Rule 11.06 provides the terms of the judgment the trial court may render:

> If the court is satisfied after hearing all the evidence, both in support and in opposition to the petition, that the material allegations of the petition are true and that the best interests of the public and the profession, as well as the ends of justice, will be served, the court may render judgment authorizing the petitioner to be reinstated upon his or her compliance ... with Rule II of the Rules Governing Admission to the Bar of Texas.... The judgment shall direct the Board of Law Examiners to admit the petitioner to a regularly scheduled bar examination in accordance with that board's rules and procedures relating to the examination of persons who have not previously been licensed as lawyers in Texas or in any other state. No Judgment of reinstatement may be rendered by default. If after hearing all the evidence the court determines that the petitioner is not eligible for reinstatement, the court may, in its discretion, either enter a judgment denying the petition or direct that the petition be held in abeyance for a reasonable period of time until the petitioner provides additional proof that he or she has satisfied the requirements of these rules. The court's judgment may include such other orders as protecting the public and the petitioner's potential clients may require.

TEX.R. DISCIPLINARY P. 11.06. This rule does not give the trial court the power to order reinstatement on the sole condition that Neal pass the bar examination, or to enjoin the Board from investigating Neal's moral character. Therefore, under *Jefferson* and *McFall,* mandamus should issue to set aside that part of the trial court's order.

The Court states that the rules exempt candidates for reinstatement from the investigation the Board conducts on candidates for admission to the Bar. The Court's interpretation ignores the history of Texas Rule of Disciplinary Procedure 11.06. Until 1994, that rule stated that the trial court may "render judgment authorizing the petitioner to be reinstated upon his or her passing a bar examination...." TEX.R. DISCIPLINARY P. 11.06 (amended 1994). In 1994, we amended Rule 11.06 to provide that a judgment may authorize reinstatement upon the petitioner's "compliance within eighteen

months ... with Rule II [of the Rules Governing Admission to the Bar]." Rule II details the general eligibility requirements for admission to the Texas Bar, such as age, character and fitness, law study, and citizenship status, in addition to passing the bar examination. RULES GOVERNING ADMISSION TO THE BAR OF TEX. II(a) (1992). Under the 1994 amendment to Disciplinary Rule 11.06, a petitioner for reinstatement is now subject to the same requirements as anyone else seeking a license. Under Admission Rule IV, no one is "eligible for admission to the Texas Bar ... until the investigation of such person's moral character and fitness has been completed, and it has been determined by the Board [of Law Examiners] that such individual possesses good moral character and fitness." RULES GOVERNING ADMISSION TO THE BAR OF TEX. IV(a) (1992). Thus, a trial court's finding of fact—that a petitioner for reinstatement possesses good character—does not exempt the petitioner from the Board's investigation. To hold otherwise renders the 1994 amendment a nullity. It would result in inconsistent readmission standards from district to district. Disciplinary Rule 11.06 does not authorize a judgment exempting one seeking reinstatement from any of the requirements of Admission Rule II.

The Court argues that the rules could not possibly mean that two different institutions are empowered to inquire whether a disbarred attorney has sufficiently reformed to entrust him with a law license. The Court gives *res judicata* effect to the district court's finding of good character on the date of judgment, as if good character were an immutable trait to be decided once and for all time. Under the Court's reasoning, a lawyer with the district court's stamp of good character could thereafter confess to the most heinous of crimes, and the Board of Law Examiners would have to let him sit for the bar exam. If he passes, our Clerk would have to give him his license. I would think the court would find it a comfort, rather than an anomaly, that the rules provide for checking and rechecking a disbarred lawyer's character before setting him loose on the public.

Moreover, the Board did not receive notice of proceedings that could result in affirmative relief granted against it in the form of an injunction. Rule 11.06 does not purport to give the trial court jurisdiction over the Board for all purposes. Nor were the Board's interests represented by the presence of the State Bar in the proceeding. The Board and the State Bar are separate entities with distinctly different interests. Section 82.004 of the Texas Government Code makes the Board the administrative body to "determine the eligibility of candidates for examination for a license to practice law in this state." Additionally, Section 81.061 of the Texas Government Code expressly withholds from the State Bar the authority to "regulate or administer ... admission standards." The State Bar's appearance in the reinstatement hearing did not represent the interests of the Board.

Therefore, the trial court did not have the power to enjoin the Board, which was never a party to the proceeding. *See* TEX.R.CIV.P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules, except where otherwise expressly provided by law or these rules."); *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex.1991) (judgment against one not a party to suit is error which may be raised for the first time on appeal).

The Court's misinterpretation of the rules is contrary to their plain meaning and advances only bad policy. I therefore dissent.