**Allen LANDERMAN, Appellant**

**v.**

**STATE BAR OF TEXAS, Appellee.**

**No. 05–07–00332–CV.**

Court of Appeals of Texas, Dallas.

March 5, 2008.

Allen Landerman, Plano, pro se.

Cynthia W. Hamilton, Asst. Disciplinary Counsel State Bar of Texas, Austin, for Appellee.

Before Chief Justice THOMAS and Justices BRIDGES and FITZGERALD.

## OPINION

Opinion by Chief Justice THOMAS.

Appellant appeals the trial court's denial of his petition for reinstatement as an attorney licensed to practice law in Texas, challenging in four issues the trial court's findings of fact and conclusions of law and contending in two issues the trial court erred in asking questions of witnesses after the close of evidence and in denying appellant's motion for new trial. We affirm the trial court's judgment.

## Background

Appellant was licensed to practice law in Texas in May 1978. In October 1990, appellant was privately reprimanded by the State Bar of Texas (the Bar) for failing to timely respond to a grievance filed against appellant by one of his clients. In December 1990, the Bar publicly reprimanded appellant for failing to timely respond to a grievance filed against appellant by another client. In October 1991, appellant entered into an agreed judgment of suspension with the Bar in which appellant's license to practice law was suspended for thirty days and appellant was placed on probation for three years following the active suspension. The suspension was based on findings appellant neglected the legal matters of four different clients.

In December 1993, appellant was convicted in federal court of being a conspirator in a scheme to commit mail fraud, wire fraud, and money laundering. Appellant essentially agreed to hold fraudulently obtained funds for a client in appellant's attorney trust account until appellant prepared the necessary documents to transfer the funds to another entity. Although appellant was not "completely aware" these were sham transactions, he admittedly learned in April 1991 that his client was engaged in conduct that might violate securities laws or federal criminal laws. Even though appellant advised his client to change his behavior, appellant learned five months later the client's practices were continuing. Appellant continued to repre-

sent the client for another year before terminating the relationship. Appellant testified he made a bad choice because he was trying to develop a substantial oil and gas practice.

Appellant was sentenced to 134 months in prison and his license to practice law was suspended by the Bar. In 1994, the Fifth Circuit Court of Appeals reversed appellant's conviction because of trial errors by the federal district court. Appellant was then released from prison, and the Bar reinstated his license to practice law. Due to the death of his trial attorney, appellant was required to obtain new counsel to represent him in a second trial on the criminal charges. Appellant's new counsel reviewed the conspiracy laws with appellant and appellant, for the first time, realized he might have violated those laws. Appellant entered into a plea bargain agreement and, on April 17, 1998, was sentenced to sixty months in prison and a $10,000 fine and, upon release from prison, was placed on supervised release for a period of three years.

When appellant was released from prison, his probation officer told him he needed to resign his license to practice law. On August 22, 2000, the Texas Supreme Court accepted appellant's resignation. Because appellant agreed to assist the federal government in its prosecution of appellant's former client, appellant was discharged from supervised release early.

In 2006, appellant filed a petition seeking reinstatement of his license to practice law. At the hearing on his petition, appellant testified he had worked as a paralegal, a tutor, and a tax preparer since being released from prison. He spends a significant amount of time participating in activities and services at his temple and in volunteering for charitable causes. His past experiences have deepened his faith and he now understands what is required

to lead a moral life. He is "older and wiser" and does not believe he will repeat his mistakes. He believes his reinstatement is in the interest of the public because he can make an impact on the legal landscape and is in the interest of the legal profession because he can mentor other lawyers and help them avoid the problems he has encountered. He also believes it is in the interest of justice to afford him a second chance.

Appellant called a number of character witnesses to testify as to his conduct and employment since being released from prison and about his skills as attorney. These witnesses testified appellant was a good, moral man who would not repeat his mistakes. Further, appellant has been active in his temple and in charitable causes since his release from prison. Appellant has strong legal skills and would be competent to assist his clients. Finally, the witnesses were not aware of anything that would make it contrary to the interests of justice, the profession, or the public for appellant to be reinstated.

The trial court denied appellant's petition.

### Findings of Fact and Conclusions of Law

In issues one through three and five, appellant challenges the trial court's findings of fact and conclusions of law, arguing (1) the findings of fact are evidentiary and not controlling and, therefore, cannot support the judgment; (2) conclusions of law one through five are incorrect as a matter of law; (3) conclusion six is not legally correct or, alternatively, the evidence is legally and factually insufficient to support the findings of fact; and (4) the successor judge erred by entering the findings of fact and conclusions of law.

### A. Filing of Findings of Fact and Conclusions of Law by Successor Judge

■ We first consider appellant's fifth issue in which he contends the findings of fact and conclusions of law were erroneously entered by the successor judge. The Honorable Nathan White was the sitting judge of the 366th Judicial District Court on December 11, 2006 and heard appellant's petition. Judge White signed the judgment denying appellant's petition on December 20, 2006. Judge White did not run for reelection and his term expired on December 31, 2006.[1] The Honorable Gregory Brewer assumed the trial court bench on January 1, 2007.

■ On January 5, 2007, appellant filed his request for findings of fact and conclusions of law by mail. Judge Brewer entered findings of fact and conclusions of law on January 12, 2007. Appellant objected to the entry of findings of fact and conclusions of law by Judge Brewer. Although the docket sheet reflects Judge White reviewed and approved the findings of fact and conclusions of law on April 5, 2007, Judge White never entered findings of fact and conclusions of law.[2] Appellant contends section 30.002(a) of the Texas Civil Practice and Remedies Code required Judge White, rather than Judge Brewer, to enter findings of fact and conclusions of law.[3] Assuming, without deciding, that

Judge White erred in failing to enter findings of fact and conclusions of law, we conclude any error was harmless.

■ When properly requested, the trial court has a mandatory duty to file findings of fact. Tex.R. Civ. P. 296, 297; *Nevada Gold & Silver, Inc. v. Andrews Indep. Sch. Dist.*, 225 S.W.3d 68, 77 (Tex. App.-El Paso 2005, no pet). The purpose of rule 296 is to give a party the right to findings of fact and conclusions of law following a conventional bench trial on the merits. *Willms v. Ams. Tire Co.*, 190 S.W.3d 796, 801 (Tex.App.-Dallas 2006, pet. denied). If the trial court fails to file findings of fact and conclusions of law after a proper request, the failure is presumed harmful unless the record affirmatively shows the complaining party suffered no injury. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989); *Willms*, 190 S.W.3d at 801.

■ Generally, an appellant is presumed harmed if, under the circumstances of the case, he has to guess at the reason the trial court ruled against him. *Willms*, 190 S.W.3d at 801–02. However, "fact findings are not necessary when the matters in question are not disputed." *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006). Accordingly, "where the facts are undisputed and the only matters presented

---

1. The terms of the 366th Judicial District Court begin on the first Mondays in January and July of each year. Tex. Gov't Code Ann. §§ 24.301, 24.302, 24.511 (Vernon 2004). The first Monday was January 1, 2007.

2. The general rule is the docket sheet "forms no part of the record which may be considered; it is a memorandum made for the clerk's and the trial court's convenience." *Bryan v. Watumull*, 230 S.W.3d 503, 507 n. 2 (Tex.App.-Dallas 2007, pet. denied); *see also In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding). Accordingly, we do not

consider Judge White's "approval" on the docket sheet as the entry of findings of fact and conclusions of law.

3. Section 30.002(a) of the Texas Civil Practice and Remedies Code provides, in relevant part:

   If district or county judge's term of office expires ... during the period prescribed for filing ... findings of fact and conclusions of law, the judge may ... file findings of fact and conclusions of law in the case.

   Tex. Civ. Prac. & Rem.Code Ann. § 30.002(a) (Vernon 1997).

on appeal are legal issues to be reviewed de novo, the failure to file findings of fact and conclusions of law is harmless error." *Rollins v. Am. Exp. Travel Related Servs. Co.*, 219 S.W.3d 1, 5–6 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

The evidence regarding the circumstances surrounding appellant's conviction, his conduct since the completion of his sentence and his prior disciplinary history was undisputed. Therefore, fact findings were not necessary, *Barker*, 213 S.W.3d at 310, and any error by Judge White in failing to enter findings of fact and conclusions of law was harmless. We overrule appellant's fifth issue.

### B. Findings of Fact

In his first issue, appellant contends the trial court's findings of fact do not support the judgment because the findings are evidentiary in nature and do not reach the ultimate or controlling issues. Because fact findings were not necessary in this case, we need not consider whether the findings reached an ultimate or controlling issue. *See Keisling v. Landrum*, 218 S.W.3d 737, 743 (Tex.App.-Fort Worth 2007, pet. denied) (court of appeals can "unfind" unnecessary findings of fact). We overrule appellant's first issue.

### C. Conclusions of Law

In his second and third issues, appellant challenges the trial court's conclusions of law as being legally incorrect and, alternatively, argues the evidence is legally and factually insufficient to support any facts that would be presumed to support the trial court's conclusion appellant's petition should be denied.

We review a trial court's conclusions of law *de novo* to determine whether the trial court drew the correct legal conclusions from the facts. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996); *Hackenjos v. Hackenjos*,

204 S.W.3d 906, 908 (Tex.App.-Dallas 2006, no pet.). We are not bound by the trial court's conclusions of law and will review them independently to determine their legal correctness. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.2006) (per curiam); *Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.*, 53 S.W.3d 382, 389 (Tex.App.-Dallas 2000, pet. denied).

■ Appellant had the burden to prove his license to practice law should be reinstated. Because he is challenging the legal sufficiency of the evidence to support an adverse finding on which he had the burden of proof, he must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *Buckeye Ret. Co. v. Bank of Am., N.A.*, 239 S.W.3d 394, 399 (Tex.App.-Dallas 2007, no pet.). In reviewing a legal sufficiency challenge, we must first examine the record for evidence supporting the finding, then examine the entire record to determine if the contrary proposition is established as a matter of law. *Francis*, 46 S.W.3d at 241; *Buckeye Ret.*, 239 S.W.3d at 399. We will sustain the challenge only if the contrary proposition is conclusively established. *Francis*, 46 S.W.3d at 241; *Buckeye Ret.*, 239 S.W.3d at 399.

■ When a party attacks the factual sufficiency of the evidence to support an adverse finding on which he had the burden of proof, he must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 241; *Buckeye Ret.*, 239 S.W.3d at 399. We must consider and weigh all the evidence and can set aside the judgment only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and un-

just. *Francis,* 46 S.W.3d at 241; *Buckeye Ret.,* 239 S.W.3d at 399.

■ Part XI of the Texas Rules of Disciplinary Procedure governs the reinstatement to the practice of law of an attorney who has been disbarred or resigned in lieu of disciplinary action. TEX.R. DISCIPLINARY P. 11.01–.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005). Before the trial court may grant reinstatement, the petitioner must prove by a preponderance of the evidence that the material allegations in the petition are true and his reinstatement would serve the best interests of the public and profession, as well as the interest of justice. TEX.R. DISCIPLINARY P. 11.03. In determining whether a petitioner should be reinstated to the practice of law, the trial court may consider, among any other relevant factors, the nature and degree of misconduct for which the petitioner was disbarred or resigned and the circumstances attending the offense; the petitioner's understanding of the serious nature of the acts for which he was disbarred or resigned; the petitioner's conduct during the disciplinary proceeding; the profit to the petitioner and the hardship to others; the petitioner's attitude toward the administration of justice and the practice of law; the petitioner's good works and other accomplishments; and any other evidence relevant to the issues of the petitioner's fitness to practice law and the likelihood the petitioner will not engage in future misconduct. TEX.R. DISCIPLINARY P. 11.05. The two core issues are whether "the petitioner is of good moral character, is fit to practice law, and has led an exemplary life for the preceding five years" and whether "reinstatement will serve the public's and profession's best interests as well as the ends of justice." *Bd. of Law Examiners v. Gabriel,* 953 S.W.2d 227, 228 (Tex.1997) (orig.proceeding); *see Steinberg v. Comm'n for Lawyer Discipline,* 180 S.W.3d 352, 356 (Tex.App.-Dallas 2005, no pet.).

■ Appellant testified he believed it was in the interest of the public and the profession and the ends of justice for him to be reinstated. Appellant's character witnesses testified they were not aware of anything that would make it contrary to the interest of the public or the profession or the ends of justice for appellant to be reinstated. However, appellant also testified as to his conduct that led to his criminal conviction and his resignation of his license to practice law. Although appellant testified he was not "completely aware" the transactions he was participating in were fraudulent, he also testified he was aware his client's conduct might violate the criminal laws for seventeen months prior to terminating the relationship. He was also aware for approximately a year before terminating the relationship that the client had not changed his conduct even though appellant had advised the client to do so. Appellant chose to continue the relationship, even with knowledge of his client's conduct, because appellant wanted to grow a substantial oil and gas practice. The trial court could properly consider appellant's choice in continuing the relationship with the client after he learned his client was engaged in illegal conduct, appellant's engaging in illegal activity during the representation, and appellant's motive for continuing the relationship in determining it would not serve the interest of the public or the profession for appellant to be reinstated.

The trial court also heard evidence regarding appellant's disciplinary history, including a private reprimand, a public reprimand, and an active suspension from the practice of law due to appellant's neglect of four different clients' matters. Although appellant argues this history is remote, the

suspension occurred within two years of appellant's conviction in 1993. Appellant has not practiced law since being released from prison. The trial court could properly consider these three separate disciplinary actions by the Bar in determining it was not in the interest of the public for appellant to be reinstated.

After reviewing the record, we conclude the evidence is legally and factually sufficient to support the judgment. We also conclude the trial court properly drew correct legal conclusions based on the facts before it. Therefore, we overrule appellant's second and third issues.

### Trial Court's Questioning of Witnesses

■ In his fourth issue, appellant contends the trial court erred by asking questions after the close of evidence of witnesses who had been released but remained in the courtroom. As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. Tex. R.App. P. 33.1(a)(1); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999); *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex.App.-Dallas 2006, no pet.). Appellant did not object to the trial court's questions at trial. Although appellant raised the trial court's questioning of the witnesses in his motion for new trial, this objection was untimely. *See Low v. Henry*, 221 S.W.3d 609, 618 (Tex.2007) (complaint about lack of notice of the subject matter of the hearing untimely when first made in motion for new trial.); *In re S.E.W.*, 168 S.W.3d 875, 885 (Tex.App.-Dallas 2005, no pet.) (complaint about admission of expert testimony waived when first raised in motion for new trial). Therefore, appellant has failed to preserve this issue for review. Tex.R.App. P. 33.1. We overrule appellant's fourth issue.

### Motion for New Trial

■ In his sixth issue, appellant contends the trial court abused its discretion in denying appellant's motion for new trial. Generally, the denial of a motion for new trial is reviewed under an abuse of discretion standard. *In re R.R.*, 209 S.W.3d 112, 114 (Tex.2006) (per curiam); *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex.App.-Dallas 2005, no pet.). We may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *El Dorado Motors, Inc.*, 168 S.W.3d at 368. Every reasonable presumption will be made on review in favor of the trial court's refusal of a new trial. *Id.* Review of a trial court's action under the abuse of discretion standard is a question of law. *Id.*

Appellant contends in his brief the trial court abused its discretion in denying the motion for new trial because the "arguments that Appellant has set forth in this brief, which Appellant adopts here, the same as if fully set forth at length, clearly demonstrate that the trial court acted arbitrarily and unreasonably in failing to grant Appellant a new trial." We question whether appellant has adequately briefed this issue. However, because we have concluded in addressing appellant's other issues that there was no error by the trial court that harmed appellant, we also conclude the trial court did not abuse its discretion in denying appellant's motion for new trial. Accordingly, we overrule appellant's sixth issue.

We affirm the trial court's judgment.